Joel TILLER, Petitioner–Appellant,

v.

Mary H. ESPOSITO, Warden, Respondent–Appellee.

No. 88–8937.

United States Court of Appeals, Eleventh Circuit.

Sept. 10, 1990.

Joel Tiller, Chester, Ga., pro se.

Fred G. Codner, King & Spaulding, Atlanta, Ga., for petitioner–appellant.

Susan Virginia Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent–appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In this appeal, Joel Tiller, petitioner–appellant, challenges the district court's denial of his petition for writ of habeas corpus. In 1969, Tiller, age 16, pleaded guilty to malice murder and one count of burglary. Tiller contends that his procedural due process rights, as enunciated in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), were violated when the state trial court failed to hold a competency hearing before accepting his guilty plea.[1] We

---

1. The state argues that Tiller has not exhausted his state post-conviction remedies regarding the *Pate* issue, suggesting that Tiller presented to the state habeas court only the substantive allegation that he was incompetent to plead guilty and did not present the *Pate* claim. We conclude that Tiller's *Pate* claim was presented to the state habeas court, and therefore is exhausted. The state also mentions that Tiller's *Pate* claim is not properly before us because it was not presented to the courts below. Even if we should construe this vague language as an asser-

agree.[2]

■ The test for determining competence to stand trial or to plead guilty is whether the defendant "has sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding" and whether the defendant "has a rational as well as factual understanding of the proceedings against him [or her]." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam). A trial court must conduct, *sua sponte*, a competency hearing when the information known to the trial court at the time of the trial or plea hearing is sufficient to raise a bona fide doubt regarding the defendant's competence. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *McNair v. Dugger*, 866 F.2d 399, 401 (11th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 109, 107 L.Ed.2d 71 (1989). Courts focus on three factors in determining whether the trial court violated the defendant's procedural due process rights by failing to hold *sua sponte* a competency hearing: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). Such an analysis focuses on what the trial court did in light of what it knew at the time of the trial or plea hearing. *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).[3]

■ In this case, all three of the factors to be considered in determining whether the trial court should have held a competency hearing weigh in favor of the petitioner. First, the trial court possessed significant information regarding Tiller's past irrational behavior. Psychiatrist Sheldon Cohen examined Tiller six weeks before the plea hearing at the request of Tiller's attorney. The attorney submitted a copy of Dr. Cohen's report to the trial judge at the time of the plea hearing. This report related in detail the circumstances surrounding the offense, including Tiller's claim that he committed the murder and burglary under the direction of an auditory hallucination—a voice named "Judah." Dr. Cohen's

tion that the *Pate* claim is procedurally barred for failure to present same to the state habeas court, we would conclude that there is no procedural bar because the claim clearly was presented, as noted above.

The state also argues that Tiller did not present the *Pate* claim to the district court. Again, the record of the proceedings below reveal that the issue was clearly presented.

We conclude that Tiller's *Pate* claim is properly before this court on appeal.

2. Tiller raises two other claims on appeal, both of which we decline to address. First, Tiller claims that he was incompetent to enter his guilty plea so that his plea was not intelligently, knowingly, and voluntarily entered. Because we are remanding to the district court to hold a competency hearing, if a meaningful one can be held, this issue should be addressed in the first instance by the district court.

Second, Tiller claims that he was deprived of his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to present properly his mental infirmities to the trial court. This claim is mooted by our remand of this case for determination of the competency issue. If Tiller prevails on that issue, and the district court determines that Tiller was in fact incompetent to enter his plea, then Tiller will receive the same remedy as he would from a finding that his counsel was ineffective for failing to request a competency hearing. If Tiller does not prevail on that issue, and the district court determines that Tiller was competent to enter his plea, then Tiller would not be able to satisfy the prejudice prong of his ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Therefore, we decline to address Tiller's ineffective assistance of counsel claim on this appeal.

Tiller also presented the following claim to the district court: that he was suffering from delusional compulsion at the time of the offenses. This claim was rejected by the district court, and Tiller does not challenge that decision on appeal. Therefore, we deem this claim to be abandoned.

The state asserted in the district court that the petition should be dismissed on the basis of Rule 9(a) of the Rules Governing Section 2254 cases. The district court rejected the state's argument, and the state does not appeal that decision. We therefore deem the Rule 9(a) claim to be abandoned.

3. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

report also describes how Tiller twice attempted suicide while in jail awaiting trial. At least one of these attempts was accompanied by auditory and visual hallucinations.[4] In addition, Dr. Cohen reported that Tiller's family had a history of mental illness: his father and grandmother both had been institutionalized because of mental illness, and his mother was an alcoholic. Tiller's suicide attempts, along with his bizarre account of the murder and his family background of mental illness, provided ample evidence of past irrational behavior to alert the trial judge that Tiller's mental competency was in doubt.

Not only did the trial court possess evidence of Tiller's past irrational behavior, but the court also possessed uncontroverted psychiatric evaluations which concluded that Tiller suffered from severe paranoid schizophrenia. Dr. Cohen reported that Tiller not only suffered from auditory and visual hallucinations, but that he also showed markedly bizarre and inappropriate behavior, that his reality contact was generally poor, that he was unable to control the feelings of rage within himself, and that he suffered from a severe form of schizophrenia. Dr. Cohen concluded that Tiller was not aware of the nature and consequences of his acts and was not capable of distinguishing right from wrong at the time of the offense or at the time of the examination. Dr. Cohen also concluded that Tiller could not intelligently aid his trial counsel in his own defense.

Dr. Tait, a psychiatrist appointed by a juvenile court judge to evaluate Tiller before Tiller's case was moved to the superior court, examined Tiller approximately three weeks after the offense occurred. Dr. Tait reached conclusions similar to those of Dr. Cohen. Dr. Tait noted that Tiller was suffering from delusions and/or hallucinations relating to his illegal conduct and that his will was overpowered when he committed the murder and the burglary.[5] These two psychiatric evaluations were uncontroverted at the time the trial court accepted Tiller's guilty plea. Together, the evaluations strongly indicated that Tiller was incompetent to plead guilty.

Tiller's demeanor at the plea hearing, while perhaps not sufficient in itself to raise a bona fide doubt regarding his competence to plead guilty, *see Thompson v.*

---

**4.** Dr. Cohen, in his report, described the two attempted suicides:

> One time his voice (Judah) told him, "You'll kill yourself or I'll split your heart out." He [Tiller] saw a very shiny steel axe which was hanging in the air by itself. He saw a smokey figure like a man with features that he could not make out. He carried on a dialogue with the voice which told him that he would suffer greater punishment if he did not carry out the act, and he then evidently tore strips of sheets and hung himself, being found unconscious and taken to the hospital ward.
>
> On another occasion he wanted to see "how thick my blood is" and cut his wrist and antecubital area. He said that his blood was certainly thick because it congealed and it stopped bleeding.

**5.** Dr. Tait's report provides in relevant part:

> I examined Joel Tiller in my capacity as consulting psychiatrist at the request of Judge Langford of Fulton County Juvenile Court on June 17, 1968. I did form a professional opinion as to the state of his mind at the times when the indictments charge the offenses were committed. My opinions are as follows:
>
> (1) That Joel Tiller was, as at the time of my examination, suffering from a severe schizophrenic disorder, that he was suffering from this disorder at the times of the alleged offenses, and that he probably has suffered from this disorder for some time preceding those dates.
>
> (2) At the said times he may have had sufficient reason to answer questions about whether the alleged acts were right or wrong, but I am not sure that he would have fully understood the questions; further, he probably was unable to govern his own behavior based on that distinction, for his judgment was so disturbed by the psychotic process and he was at said times suffering from such delusions and/or hallucinations relating to these acts that his will was overpowered and the acts committed.
>
> (3) That he should be committed to a mental hospital such as Central State Hospital for long term care.
>
> The information which you have mentioned in your letter concerning his nearly successful suicide attempt under promptings by the same "voice" which impelled his other irrational acts is quite consistent with the nature of the schizophrenic disorder as I observed it on the date of my examination. I consider him a severely disturbed person and regard his prognosis as unfortunately quite poor if he does not receive treatment, and, even with treatment, extremely guarded.

*Wainwright,* 787 F.2d 1447, 1458 (11th Cir. 1986) (defendant's one incorrect response to a question from the judge did not indicate incompetence), at least supports the doubt raised by the psychiatrists' evaluations and by Tiller's prior irrational behavior. In response to the trial judge's question whether there was anything that Tiller did not understand about his case, Tiller stated that he wanted to know whether he would receive psychiatric treatment if he pleaded guilty. This statement, coming directly from Tiller, could have served only to further alert the trial court that Tiller's mental competency was in serious doubt.

In this case, we have one additional piece of evidence that supports our conclusion that there was sufficient evidence before the state trial court to create a bona fide doubt as to Tiller's competence to plead guilty. On the date following Tiller's guilty plea and sentencing, the trial judge sent to the Department of Corrections a letter, which reads as follows:

> I am enclosing a psychiatric report from two prominent Atlanta psychiatrists showing their opinion as to the condition of the subject defendant. I would like to respectfully urge the medical board to review this defendant's condition and send him to the Criminal Section of the Central State Hospital.

This letter indicates that the trial judge was, in fact, concerned at the time of the guilty plea and sentencing with Tiller's mental competence.

Tiller's request at the plea hearing for psychiatric treatment, the psychiatric evaluations performed by Drs. Tait and Cohen, the other evidence of petitioner's irrational behavior (particularly Tiller's suicide attempts), and the trial judge's letter to the Department of Corrections all demonstrate that the trial court possessed substantial and convincing evidence of Tiller's possible mental incompetency. *Cf. Acosta v. Turner,* 666 F.2d 949 (11th Cir.1982) (defendant's history of mental illness, his need for treatment and continued care, and the fact that the trial judge found it necessary to order several psychiatric evaluations of the defendant, provide sufficient evidence that there was a bona fide doubt as to the defendant's competency to stand trial). Accordingly, the state trial court was required to *sua sponte* hold a competency hearing to establish Tiller's competency to plead guilty. The state court's failure to hold such a hearing violated Tiller's procedural due process rights.

We therefore reverse the judgment of the district court and remand this case for a determination of whether an adequate and meaningful *nunc pro tunc* inquiry can be made into the question of whether Tiller was, at the time of the plea hearing, incompetent to plead guilty. *See Acosta v. Turner,* 666 F.2d at 956. If a meaningful inquiry can be held, then the district court must determine Tiller's competency as of the time of the plea hearing. *Id.* If a meaningful inquiry cannot be held, then the district court must grant the writ. *See Drope v. Missouri,* 420 U.S. at 183, 95 S.Ct. at 909 (holding that a *nunc pro tunc* proceeding would be inadequate in that case, but that the state was free to retry the petitioner if at the time of such trial the petitioner was competent to stand trial); *Lokos v. Capps,* 625 F.2d 1258, 1262 (5th Cir.1980).[6]

REVERSED and REMANDED.

---

**6.** In its report below, the magistrate concluded, without benefit of an evidentiary hearing, that Tiller had presented insufficient evidence of his mental incompetence to overcome the state trial court's determination that he was competent to enter a plea of guilty. The district court subsequently adopted the magistrate's report. We conclude that the magistrate made its determination on the basis of a faulty premise, i.e., that the state trial judge actually found that Tiller was competent to plead guilty. Although the state trial judge had before it substantial evidence of Tiller's mental incompetence, the judge failed to hold a competency hearing and never made any findings regarding Tiller's competence. The magistrate therefore erred in deferring to the state trial judge's "determination" that Tiller was competent.