[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11165
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-20046-JAL-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAZARO MATEO,
a.k.a. Caravela,
a.k.a. Ricky

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 9, 2011)

Before HULL, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Lazaro Mateo appeals his conviction and his lifetime term of supervised

release for conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) and 846. After review, we affirm.

## I. BACKGROUND

### A. Indictment and Plea Agreement

In 2008, law enforcement conducted an extensive undercover investigation into a heroin trafficking network in the Miami area and used wire taps, surveillance and controlled buys with a confidential informant. Defendant Mateo worked for the main heroin supplier, codefendant Willie Berrios. Berrios provided heroin to codefendants Julio Borges and Howard Burgos, who, in turn, supplied many other distributors.

A 28-count superseding indictment was brought against Mateo and sixteen codefendants, including Berrios and Borges. Pursuant to a plea agreement, Mateo pled guilty to Count 1, the heroin conspiracy count. The plea agreement contained a sentence appeal waiver that waived Mateo's right to appeal his sentence "unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the Court establishes at sentencing."

### B. Plea Colloquy

At the plea hearing, the district court elicited from Mateo that he: (1) was

2

forty years old and had a sixth or seventh grade education; (2) was not under the influence of any drug, medication or alcoholic beverage, either at the hearing or while discussing his criminal case with his attorney; (3) was not recently under the care of a doctor or psychiatrist; and (4) had not recently been hospitalized. At one point, Mateo did not immediately respond to one of the district court's questions. His attorney offered to explain it to Mateo and stated, "he has some issues that we will be flushing out between now and the sentencing, but we're confident that he can - -." The district court rephrased the question, and Mateo was able to respond.

The district court read Count 1 to Mateo and asked the government to give a proffer of the facts. The government stated that Defendant Mateo engaged in multiple intercepted cell phone calls with codefendant Berrios and delivered heroin pursuant to Berrios's instructions. During one phone call, Berrios directed Defendant Mateo to confirm that 500 grams of heroin were at a warehouse, which Mateo did. In another phone call, Berrios directed Mateo to take 1 kilogram of heroin from the warehouse to codefendant Borges. On that occasion, Mateo was stopped by police, and a search of his car revealed 999.3 grams of heroin. A subsequent search of the warehouse revealed a further 2.68 kilograms of heroin. The government advised that the parties agreed that Mateo facilitated the

3

distribution of at least 1.5 kilograms of heroin during the conspiracy.

The district court asked Mateo whether he understood the charges against him, and Mateo replied, "Yes, Ma'am." The district court asked Mateo if he admitted the facts as stated by the government, and Mateo replied, "Yes, I do." The district court confirmed with Mateo that the government's factual proffer was correct and that Mateo did not have any changes or corrections.

The district court also confirmed with Mateo that he understood that: (1) the mandatory minimum imprisonment term was ten years and the maximum imprisonment term was life; (2) after Mateo completed his imprisonment term, he would serve a period of supervised release, with a minimum of a five-year term and a maximum of a life term; (3) the court could not determine Mateo's advisory guidelines range until after the presentence investigation report ("PSI") was prepared; (4) the court would consider all the sentencing factors; and (5) the ultimate sentence imposed might be different from any estimate given to Mateo by his attorney.

The district court asked Mateo: (1) if his guilty plea was being made freely and voluntarily, to which Mateo replied, "Yes, Ma'am"; and (2) if anyone forced or threatened him to plead guilty or if anyone had made representations to him, other than the plea agreement, to convince him to plead guilty, and Mateo replied,

"No, Ma'am." Mateo indicated that he was satisfied with his attorney and that he had adequate time to confer with his attorney about the conspiracy charge, the proceedings and all matters related to the charge.

The district court read Mateo the plea agreement and asked Mateo if he had read the agreement before he signed it. Mateo indicated that the plea agreement was read to him and that he discussed the agreement with his attorney. Mateo confirmed that he: (1) understood the terms of the agreement; (2) understood that he was giving up his right to appeal the sentence; (3) had entered into the waiver of his appellate rights freely and voluntarily; (4) had fully discussed the appeal waiver with his attorney; and (5) understood that, if the court accepted his guilty plea, he would be bound by the plea, even if the sentence was more severe than expected.

The district court asked Mateo's counsel about Mateo's "issues" that he would explore pending sentencing. Mateo's counsel indicated that these were "[d]iminshed capacity-type issues" and that Mateo "ha[d] a history, and [the defense was] doing a psychological workup on him." The district court asked Mateo's defense counsel if he was asserting a competency issue "at this time," and defense counsel replied that he was not. The district court found that Mateo had entered into the sentence appeal waiver knowingly, freely and voluntarily and that

Mateo was "fully competent and capable of entering an informed plea, that [he was] aware of the nature of the charge and the consequences of the plea and that the plea of guilty [was] a knowing and voluntary plea." The district court accepted Mateo's guilty plea.

## C. PSI

The PSI: (1) assigned a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3), based on drug quantity; (2) raised the offense level to 37, pursuant to U.S.S.G. § 4B1.1(a), because Mateo was a career offender;[1] (3) applied a three-level decrease, pursuant to U.S.S.G. § 3E1.1(a)-(b), for acceptance of responsibility. With a total offense level of 34 and a criminal history category of VI pursuant to U.S.S.G. § 4B1.1, the PSI recommended an advisory guidelines range of 262 to 327 months' imprisonment and a term of supervised release of "at least five years."

The PSI indicated that Mateo reported: (1) having a learning disability his entire life and receiving counseling in school; and (2) being hospitalized as an infant for inhaling an unknown chemical, which he believed may have contributed to his learning disability. The PSI noted that during the presentence interview,

---

[1] The PSI identified two prior felony crimes of violence: (1) 1991 convictions for burglary of a conveyance, grand theft, aggravated assault and unlawful possession of a firearm; and (2) 1993 convictions for second degree murder, attempted robbery and burglary with assault.

Mateo "appeared slow and had difficulty recalling any past treatment and dates."

The PSI summarized the findings of Dr. Heather Holmes, who evaluated Mateo in 2009 and diagnosed him with depressive disorder and learning disorder. Dr. Holmes found that Mateo had a learning disability similar to dyslexia and an I.Q. score of 66, "which [was] typically a diagnostic indicator of mental retardation." However, Dr. Holmes "did not believe [Mateo] fell into that category," explaining that "the severity of [Mateo's] learning disability impacted his performance on the test and likely lowered his overall I.Q. score."

Mateo filed written objections to the PSI's drug quantity used to calculate his base offense level and his designation as a career offender.

**D.      Motion for Downward Departure or Variance**

Mateo also filed a motion for a downward departure and/or variance. Mateo argued that a downward departure was warranted: (1) under U.S.S.G. § 5K2.13 based on his diminished capacity; and (2) under U.S.S.G. § 4A1.3 because his criminal history category overstated the seriousness of his criminal history. Mateo attached a copy of Dr. Holmes's evaluation of Mateo, which stated that: (1) Mateo "displayed evidence of scholastic and cognitive difficulties"; (2) Mateo was only able to read at a first-grade level; and (3) Mateo's "ability to exercise the power of reason is significantly impaired." Dr. Holmes concluded that "[b]ased on this and

7

his history of reliance on and/or manipulation by others . . . his diminished capacity contributed substantially to the commission of the offense."

### E. Sentencing

At the sentencing hearing, Mateo withdrew his objections to the PSI. The district court adopted the PSI's factual findings and guidelines calculations and found that Mateo's advisory guidelines range was 262 to 327 months' imprisonment.

In support of his motion for a downward departure and in mitigation, Mateo cited Dr. Holmes's evaluation as to his diminished capacity. Mateo's counsel stated, "Now, clearly, I thought he was competent to go forward. He is. He also knew that what he was doing was wrong." Mateo's counsel, however, argued that: (1) Mateo's diminished capacity significantly contributed to his commission of the offense; (2) Mateo was essentially a "delivery boy" for codefendant Berrios and did what Berrios told him to do; and (3) Mateo may have been under the influence of others when he committed his prior felonies that resulted in his career offender status. Defense counsel further stated that Mateo "understood from the very beginning that what he did was wrong . . . [t]hat's why [Mateo] didn't want me to file any motions. He didn't want me to try the case. He just wanted to come in and say he was guilty and he understood what he did and he understood that it

8

was wrong."

The district court denied the downward departure request under U.S.S.G. § 4A1.3 to the extent it was based on Mateo's criminal history. The district court, however, granted a downward departure under U.S.S.G. § 5K2.13 based on Mateo's diminished capacity, noting Dr. Holmes's findings that Mateo's impaired ability to reason significantly contributed to his commission of the offense.[2]

Rather than the advisory guidelines range of 262 to 327 months, the district court imposed a 180-month sentence, followed by a lifetime term of supervised release. In determining the appropriate sentence, the district court considered the 18 U.S.C. § 3553(a) factors and noted that Mateo's offense was a very serious drug charge and Mateo had a very serious criminal history. The district court stated:

> [G]iven the other Defendants who were sentenced as career offenders in this large-scale, serious drug-trafficking conspiracy and the diminished capacity of [Mateo] as well as the other [§ 3553(a)] factors, including the need to protect the public from further crimes of [Mateo], based upon this diminished capacity, [Mateo's] inability to exercise the power of reason and [Dr. Holmes's] finding that [Mateo is] subject to manipulation by others, I do find that there's - - the factor of protecting the public from further crimes of [Mateo] is one I should consider, as well as the serious criminal history background that [Mateo] has, which

---

[2]Section 5K2.13 authorizes a downward departure if "the defendant committed the offense while suffering from a significantly reduced mental capacity" that "contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13.

involves at least . . . two crimes of violence.

And there seems to be a pattern of these crimes of working with others . . . he always seems to be involved with others as well as this case, where he seems to be doing the bidding of others.

The district court explained that the lifetime term of supervised release was necessary "to prevent [Mateo] from being involved in further crimes, to being manipulated by persons who may not have his best interests at heart and certainly do not have society's best interests at heart."

After Mateo objected to the supervised release term, the district court noted that it would consider reducing or terminating supervised release if there was a positive change based on the treatment Mateo received. The district court again emphasized Mateo's career offender status, serious criminal history and the seriousness of his drug conspiracy offense. The district court explained that Mateo "was subject to the same kind of manipulation even by the presentation of the defense in this case as he seemed to be in the prior criminal history cases." The district court stressed that "sometimes it's difficult for a family to provide that kind of supervision, especially for, you know, a grown man. But in some instances, the Court has to step up and provide the kind of supervision that may be necessary for [Mateo]." Mateo filed this appeal.

## II. DISCUSSION

**A.    Failure to Hold a Competency Hearing <u>Sua Sponte</u>**

On appeal, Mateo argues that the district court erred by failing to inquire <u>sua sponte</u> into his competency during the plea hearing.[3]

A defendant has a due process right not to be tried or convicted while incompetent.  <u>Drope v. Missouri</u>, 420 U.S. 162, 171-72, 95 S. Ct. 896, 903-04 (1975).  A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him."  <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106 (11th Cir. 1995).

The district court must <u>sua sponte</u> conduct a hearing to determine a defendant's mental incompetence "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  This Court has concluded that the trial court must <u>sua sponte</u> conduct a competency hearing when the information known to the district court is "sufficient to raise a bona fide doubt regarding the defendant's

---

[3]This Court reviews for an abuse of discretion a district court's failure to order <u>sua sponte</u> a competency hearing.  <u>See</u> <u>United States v. Williams</u>, 468 F.2d 819, 820 (5th Cir. 1972).

11

competence." Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990).

We consider three factors in deciding whether the trial court violated the defendant's due process rights by failing sua sponte to hold a competency hearing: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor during the court proceedings; and (3) prior medical opinion regarding the defendant's competence to stand trial. Id. Our analysis "focuses on what the trial court did in light of what it knew at the time of the trial or plea hearing." Id. "Because legal competency is primarily a function of [a] defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect." Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996).

Here, none of the factors suggests the district court sua sponte should have held a competency hearing before accepting Mateo's guilty plea. There was no evidence of past irrational behavior by Mateo. Mateo's demeanor during the proceedings was unexceptional. Mateo gave appropriate, polite answers to the district court's questions and did not give the district court any reason to believe that at the time of the plea hearing Mateo was unable to assist his counsel or understand the charges against him. There was no medical opinion as to Mateo's competency.

12

While the issue of Mateo's mental disability was discussed at the plea colloquy, "the mere presence of mental illness or other mental disability at the time [the defendant] entered his plea does not necessarily mean that he was incompetent to plead . . . ." Bolius v. Wainwright, 597 F.2d 986, 990 (5th Cir. 1979). Although Mateo's counsel indicated that a psychological workup was being done on Mateo, the remarks of both the district court and Mateo's counsel make clear that all parties understood that this issue was to be a mitigating factor at sentencing, not an allegation of incompetency. All the information before the district court indicated that Mateo was able to participate meaningfully in the proceedings against him. Further, Mateo's counsel expressly declined to raise the issue of competence at the plea hearing. Under these particular circumstances, the district court did not abuse its discretion in failing to hold a competency hearing sua sponte.[4]

## B. Plea Colloquy

Mateo contends the district court erred at the plea colloquy by failing to explain fully to him the pertinent elements of his offense, in violation of Federal

---

[4]To the extent Mateo argues that the district court should have held a competency hearing before sentencing, the factors do not weigh in his favor at that stage in the proceedings either. At sentencing, Mateo behaved rationally and there is no evidence of past irrational behavior. While the district court had the benefit of Dr. Holmes's evaluation, Dr. Holmes never indicated that Mateo was mentally incompetent. Additionally, Mateo's counsel reiterated his belief that Mateo was competent.

13

Rule of Criminal Procedure 11.[5]

"Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000). "When accepting a guilty plea, a court must address three core concerns underlying Rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." Id. (quotation marks omitted).

Mateo's brief focuses on the second core concern. Whether the district court "complied with Rule 11's mandate to satisfy itself that the [defendant] understood the nature of the charges against [him]" depends on "the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence." United States v. DePace, 120 F.3d 233, 237 (11th Cir. 1997) (quotation marks omitted). "[F]or simple charges . . . a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will

---

[5]Because Mateo did not object to the plea proceedings in the district court, we review the court's compliance with Rule 11 for plain error. United States v. Brown, 586 F.3d 1342, 1345 (11th Cir. 2009), cert. denied, 130 S. Ct. 2403 (2010). To show the district court committed plain error under Rule 11, the defendant must show "a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004).

14

usually suffice." United States v. Lopez, 907 F.2d 1096, 1099 (11th Cir. 1990) (quotation marks omitted).

The conspiracy charge to which Mateo pled guilty was a simple one. See United States v. Bell, 776 F.2d 965, 966, 969 (11th Cir. 1985) (concluding that the offense of conspiracy to possess marijuana with intent to distribute, in violation of § 846, was a "simple" charge). The district court read the entire heroin conspiracy count to Mateo, including allegations that many defendants, including Mateo, agreed to possess with intent to distribute heroin and that the offense involved 1 kilogram or more of heroin. Mateo indicated to the district court that he had discussed the charge with his attorney and that he understood the charge against him. Furthermore, Mateo had an extensive criminal history, indicating he had familiarity with the court system. Nothing in the record as a whole suggests Mateo did not understand the nature of the conspiracy charge to which he pled guilty.

Alternatively, Mateo argues that the district court violated Rule 11 by failing to ensure there was a sufficient factual basis to sustain his conviction. Under Rule 11(b)(3), the district court, before entering a judgment on a guilty plea, must first "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). This requirement protects "a defendant who mistakenly believes that

15

his conduct constitutes the criminal offense to which he is pleading." United States v. Frye, 402 F.3d 1123, 1128 (11th Cir. 2005) (quotation marks omitted). "The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." Id. (quotation marks omitted).

In Mateo's case, there was a sufficient factual basis for the district court to accept Mateo's guilty plea. Mateo admitted the facts in the government's proffer, including that: (1) he assisted in distributing at least 1.5 kilograms of heroin pursuant to codefendant Berrios's instructions; (2) on one occasion, Mateo followed Berrios's instructions to confirm that the warehouse had 500 grams of heroin; (3) on another occasion, Mateo followed Berrios's instructions to take 1 kilogram of heroin to another codefendant, Borges, and, while in transit, was stopped by police, who found 999.3 grams of heroin in Mateo's car; and (4) when police searched the warehouse, they found another 2.68 kilograms of heroin. From these facts, the district court reasonably could find that Mateo was responsible for distributing over 1 kilogram of heroin pursuant to an agreement with Berrios.

Moreover, Mateo has not argued, much less shown, a reasonable probability that, but for either alleged Rule 11 error, he would not have pled guilty. At the

plea and sentencing hearings, Mateo did not express any reservation about pleading guilty or indicate a desire to withdraw his plea and proceed to trial. To the contrary, Mateo's counsel informed the district court that Mateo did not want counsel to try the case, but wanted counsel to inform the court that Mateo was guilty and that Mateo understood that what he did was wrong. Under the circumstances, Mateo has not shown plain error under Rule 11.

## C.     Lifetime Supervised Release Term

Mateo argues that his lifetime supervised release term is substantively unreasonable.[6] At the outset, we note that this sentencing issue falls within an exception to Mateo's sentence appeal waiver because the district court's supervised release term of life exceeded the advisory guidelines range of five years of supervised release.[7]

We review the substantive reasonableness of a sentence for abuse of discretion in light of the totality of the circumstances. Gall v. United States, 552

---

[6]Mateo raises no procedural challenge to the imposition of his supervised release term.

[7]Mateo also challenges his designation as a career offender. Mateo's sentence appeal waiver precludes review of this issue because it does not fall within any of the appeal waiver provision's exceptions. Mateo's argument that the appeal waiver is unenforceable due to his diminished capacity is without merit. The district court specifically questioned Mateo about the sentence appeal waiver, and Mateo confirmed he had discussed the appeal waiver with his attorney, understood he was giving up his right to appeal his sentence and was doing so freely and voluntarily. See United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993).

17

U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in light of both the record and the § 3553(a) factors.[8] United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Although "[s]entences outside the guidelines are not presumed to be unreasonable, . . . we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct. 2847 (2009). However, we "must give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Here, Mateo has not met his burden to show that the lifetime term of supervised release was substantively unreasonable. Mateo has an extensive criminal history, with many of his offenses involving multiple codefendants. At sentencing, Mateo's counsel argued that Mateo may have been manipulated by others to commit these prior offenses. Dr. Holmes's evaluation did find that Mateo's mental disability impaired his ability to reason, made him susceptible to

---

[8]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

being manipulated by others and significantly contributed to his commission of the instant offense. And the district court left open the possibility that it would reduce or terminate supervised release if Mateo responded well to counseling.

Furthermore, the lifetime supervised release term was entirely consistent with the district court's grant of a U.S.S.G. § 5K2.13 downward departure for diminished capacity (an 180-month sentence, which was a departure from the guidelines range of 262 to 327 months). "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Moriarty, 429 F.3d 1012, 1025 (11th Cir. 2005) (quotation marks omitted). Thus, the district court could reasonably determine that Mateo's mental disability lessened Mateo's culpability and the resulting need for incarceration, while at the same time increasing Mateo's need for monitoring and rehabilitation. See id. at 1025; see also United States v. Johnson, 529 U.S. 53, 59, 120 S. Ct. 1114, 1119 (2000) (providing that the "primary goal of supervised release is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who . . . still needs supervision and training programs after release" (citation and brackets omitted)). Given the need to protect the public and provide supervision and treatment to Mateo, the district court did not abuse its discretion by imposing a lifetime term of supervised release.

19

**AFFIRMED.**