[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13545
Non-Argument Calendar

_____

D.C. Docket Nos. 4:12-cv-00109-HLM; 4:10-cr-00019-HLM-WEJ-2


JAVIER RIVERA-BENITO,
a.k.a. Venino Vargas,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(September 21, 2016)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

On May 20, 2010, a Northern District of Georgia grand jury returned a

multi-count indictment against Petitioner, Javier Rivera-Benito, and four others for

conspiring to possess with intent to distribute methamphetamine and cocaine (Count One), in violation of 21 U.S.C. § 846, and against Petitioner with the substantive possession offense (Counts Eleven and Twelve), in violation of 21 U.S.C. § 841(a), and with illegal entry into the United States (Count Fourteen), in violation of 8 U.S.C. § 1326(a) and (b)(2).  On March 2, 2011, pursuant to a plea agreement, Petitioner pled guilty to the above counts, and on May 12, 2011, the District Court sentenced him to concurrent prison terms of 121 months and a five-years' term of supervised release.  He did not appeal his convictions or sentences.

On May 12, 2012, Petitioner, proceeding pro se, moved the District Court to vacate his sentences pursuant to 28 U.S.C. § 2255, on several grounds---all based on his alleged retardation and incompetency to plead guilty.  The Court referred the motion to a Magistrate Judge, who, after holding an evidentiary hearing, issued a Report and Recommendation (R & R) recommending that the District Court deny relief.[1]  The Court adopted the R & R and denied Petitioner's motion.

After Petitioner filed his notice of appeal, the Court issued a Certificate of Appealability presenting four issues: (1) "whether Petitioner was incompetent to enter a guilty plea based on his alleged mental retardation" (Ground One); (2) "Whether Petitioner's trial counsel provided effective assistance by failing to

---

[1] The Magistrate Judge issued a Final R & R on September 13, 2013.  After Petitioner objected to the R & R, the District Court instructed the Magistrate Judge to hold an evidentiary hearing.  He issued a Supplemental Final R & R on May 7, 2015, following the hearing.

2

investigate Petitioner's alleged mental retardation" (Ground Two); (3) "whether Petitioner's guilty plea was knowingly, intelligently, and voluntarily entered" (Ground Three); and (4) "whether the District Court violated Petitioner's due process rights by failing to inquire about Petitioner's competency and to hold an evidentiary hearing, allegedly in violation of *Pate v.* Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L.Ed.2d 815 (1996)"(Ground Four). We conclude that the District Court properly resolved these four issues against Petitioner and therefore affirm its judgment.

We begin our discussion with the fourth ground for relief.  We conclude that nothing that occurred before the District Court prior to or during the hearing in which Petitioner tendered his guilty pleas raised a bona fide doubt as to whether he was incompetent to plead guilty, because he was retarded or otherwise lacked the mental capacity to proceed, such that the Courts should have had him evaluated.  Next, we consider the first and third grounds and conclude that Petitioner failed to carry his burden of proving that his pleas were involuntary because he was retarded.  That takes us to the second ground, that his attorney provided ineffective assistance.  That ground also fails for lack of proof.

## I.

Whether a defendant is not competent to plead guilty (or stand trial) depends on "whether [a defendant] has sufficient present ability to consult with his lawyer

with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) quoting *Dusky v. United States,* 362 U.S. 402, 80 S. Ct. 788, 4 L.Ed.2d 824 (1960)).  Not every manifestation of mental illness demonstrates that the defendant is incompetent; rather, the evidence must indicate a present inability to assist counsel or understand the charges.  *Battle*, 419 F.3d at 1299.  Similarly, neither low intelligence nor mental deficiency can be equated with mental incompetence to plead.  *Id.*

Petitioner raised the question of his competence to stand trial in an earlier criminal case brought against him in the Northern District of Georgia.  On September 26, 2006, he and two other illegal aliens were indicted in the Northern District, in *United States v. Venito Vargas, a/k/a Javier Rivera Benito et al.*, Case no. 1:06-cr-403 (N.D. Ga. 2006), charged with the possession of two handguns and ammunition, in violation of 18 U.S.C. § 922(g)(5), and with having been found in the United States after deportation, in violation of 8 U.S.C. § 1326(a).[2]  Petitioner, represented by a Federal Public Defender, pled guilty to the charges on December 18, 2006.  Prior to sentencing, his attorney obtained leave of court to have Petitioner evaluated for "mitigation purposes."  Dr. Jorge A. Herrera, Ph.D,

---

[2]  District Judge William S. Duffey, Jr. presided over Case No. 1:06-cr-403.  The instant case was assigned to District Judge Robert L.Vining, Jr, but was reassigned to District Judge Harold L. Murphy on August 29, 2014.  Judge Murphy presided over the instant case to its conclusion.

performed a full neuropsychological examination and determined that he was competent to proceed with sentencing because he could assist counsel and understood the basic legal concepts involved.  As for retardation, Herrera concluded that he presented test scores consistent with mild to moderate retardation.  The District Court found Petitioner competent to proceed and on June 29, 2007, sentenced him to concurrent prison terms of 27 months to be followed by a three-years' term of supervised release.

Following his release from prison, Petitioner was deported to Mexico.  His stay there was brief.  He unlawfully reentered the United States, and on September 29, 2009, was arrested in Houston, Texas, charged with driving under the influence.  He pled guilty and was sentenced to the Harris County jail for 30 days.  On learning of Petitioner's conviction, the Northern District of Georgia's Probation Office, on October 23, 2009, petitioned the District Court in Case No. 1:06-cr-403 to revoke his supervised release on two grounds---illegal entry into the United States, in violation of 8 U.S.C. § 1326(a), and violation of state law.

Seven months later, on May 20, 2010, Petitioner and four others were indicted and taken into custody in the instant case.  The criminal conduct they were charged with in Count One of the indictment---conspiring to possess with intent to distribute methamphetamine and cocaine---began on November 2, 2009, shortly after Petitioner was released from jail.  Because he was under indictment and

5

already in custody, the Probation Office's petition to revoke his supervised release in Case No. 1:06-cr-403 lay dormant until he had been sentenced in the instant case, on May 12, 2011.

On May 25, 2011, the District Court in Case No. 1:06-cr-403 appointed the Federal Public Defender to represent Petitioner in the revocation proceeding.  On June 27, 2011, his attorney had him examined by Dr. Adriana L. Flores, Ph.D, a forensic psychologist, to determine his competency to participate with counsel at the revocation hearing the court had scheduled for July 13, 2011, and his competency to enter the pleas of guilty in the instant case earlier, on March 2, 2011.  Dr. Flores examined Petitioner on June 27, 2011, and found him competent to proceed with the revocation hearing in Case No. 1:06-cr-403 but not competent to plead guilty in the instant case.

The revocation hearing in Case No. 1:06-cr-403 was held as scheduled, on July 13, 2011.  After Petitioner admitted that he had reentered the United States in violation of 8 U.S.C. § 1326(a), the District Court revoked his supervised release and sentenced him to prison for 20 months, to run concurrently with the sentences imposed in the instant case.

On September 10 and October 23, 2014, the Magistrate Judge held an evidentiary hearing on the § 2255 motion, now before us, challenging his four convictions in the instant case.  Prior to the hearing, the Magistrate Judge reviewed

the written psychological evaluations of Drs. Herrera and Flores and the transcript of the March 2, 2011, hearing in which Petitioner had pled guilty to the four offenses.  At the hearing, he heard the testimony of Drs. Herrera, Flores and Scott Duncan, Ph.D, a psychologist, who had examined Petitioner on July 28, 2014, for eight hours with the assistance of a Spanish interpreter, who was also a psychologist.  After considering this evidence, the Magistrate Judge concluded---primarily on the basis of Dr. Duncan's testimony---that Petitioner had failed to "demonstrate his incompetency by a preponderance of the evidence," and, therefore, in his R & R, recommended that the Court reject Petitioner's first ground for § 2255 relief, that he is retarded and thus was incompetent to plead. He recommended that the District Court deny the third ground, that his plea was involuntary, because the first ground, on which it was based, in part, failed; Petitioner's "repeated affirmations of understanding, made under oath during the plea colloquy, are presumed true, and [he failed to satisfy his] 'heavy burden' to show that those statements were actually false." He recommended the denial of the third ground (based on *Pate v. Robinson*), because Petitioner failed to establish a "'bona fide'" doubt as to his competency in the information available to the District Court during [his] criminal case, and the fourth ground (ineffective assistance) for lack of prejudice. As stated *supra,* the District Court adopted the

7

Magistrate Judge's factual findings and his recommendation that Petitioner's motion be denied.

## II.

Boiled down to its essentials, Petitioner seeks the reversal of the District Court's decision on two grounds.  First, the Court erred in crediting Dr. Duncan's opinion testimony over those of his experts, Drs. Flores and Hererra.  Second, the transcript of his plea colloquy with the Court shows that his pleas were invalid.  We consider these arguments in turn.

## A.

We find no clear error in the District Court's decision to credit Dr. Duncan's testimony over the conflicting testimony adduced of Drs. Flores and Herrera.  Drs. Flores and Herrera determined that Petitioner had the ability to assist his attorney, that he was competent to proceed with a supervised release revocation hearing, and that he could understand plea bargaining and trial process.  During the plea colloquy, Petitioner answered the Court's questions directly without asking for clarification much more frequently than he requested further clarification, and he answered all questions with the appropriate response, whether it was affirmative or negative, indicating that he understood what the Court was asking.  Furthermore, Dr. Flores testified that he would have been able to understand that trafficking in

8

drugs was illegal, especially if he had previously been convicted of a drug offense, which he had.

The Court did not clearly err in accepting Dr. Duncan's opinion that Petitioner was malingering because the record supported it.  There was evidence that he understood English, despite his claim to the contrary; he refused to take a test after he was told that it would assess his legal knowledge; he had no trouble negotiating the prison system, which, according to Drs. Duncan and Herrera, would be inconsistent with someone with his claimed IQ level; and the results of the tests he took were irreconcilable.

## B.

Petitioner contends that his low level of functioning, limited verbal abilities, poor memory, limited understanding of what happens around him, and significantly decreased ability to use conceptual skills, rendered his guilty pleas unknowing and involuntary.  He disagrees with the District Court's position that he bore "a heavy burden" to show that his repeated assertions during the plea colloquy that he understood what was taking place were actually false. His disagreement is misplaced.  There is a strong presumption that the defendant's sworn statements made during the colloquy are true.  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  He stated that he understood the nature of the charges against him and the consequences of pleading guilty.  He knew that if he needed

9

clarification of a point all he had to do was ask the Court for clarification, and he did that on several occasions.  He was able to answer the Court's questions with either an affirmative or negative response, as the questions required.  Dr. Flores testified that he would be able to understand that selling drugs was illegal, for he had previously been convicted of a drug offense.  He understood that he violated the law when he reentered the United States because he had previously been convicted of such violation on a plea of guilty.  Dr. Flores opined that he was competent to proceed with a supervised release evaluation, and that he could understand the plea bargaining and trial processes.  Dr. Herrera reached similar conclusions.  In sum, Petitioner failed to establish that his pleas were not knowing, intelligent and voluntary.  Grounds One and Three accordingly fail.

## III.

As for Petitioner's third ground, a district court must *sua sponte* conduct a hearing to determine a defendant's mental competence if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  18 U.S.C. § 4241(a).  As our previous discussion makes clear, nothing occurred before the Court---either before or during the plea colloquy---that raised a "bona fide doubt" regarding Petitioner's competence to

10

enter pleas of guilty. *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir. 1990). The Court was of course aware that in Case No. 1:06-cr-403 psychological evaluations concluded that Petitioner was competent to go forward with the proceeding to revoke his supervised release. The Probation Office's presentence report (PSI) indicated that he was mentally retarded, but his attorney and the prosecutor both agreed at sentencing in the instant case that, while he was slow, he understood what was going on and the ramifications of his guilty pleas. In sum, the Court did not err in failing *sua sponte* to continue the plea hearing and have Petitioner examined for competency to proceed.

## IV.

Finally, Petitioner argues that his attorney was ineffective for failing to investigate and present evidence of his mental condition, and for failing to request a competency hearing. He points out that counsel admitted during the sentencing hearing that until he received the PSI, he was unaware of his prior psychological evaluation indicating that he was mentally retarded,.

A claim of ineffective assistance of counsel is a mixed question of law and fact that we review *de novo*. *Devine*, 520 F.3d at 1287. To establish ineffective assistance of counsel, a prisoner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

With respect to the deficient performance prong of the *Strickland* test, Petitioner failed to overcome the strong presumption that his counsel rendered adequate assistance and exercised reasonable professional judgment. *See Chandler*, 218 F.3d at 1313. Petitioner contends that counsel's failure to investigate his mental illness history fell outside the range of reasonableness. Counsel testified, however, that his interactions with Petitioner did not indicate that he had any problems understanding. Counsel pointed to a number of facts that supported his belief that Petitioner was competent. First, when he first met Petitioner, Petitioner insisted that he had never used the name Rivera-Benito and denied being the person named in the indictment. He had to confront Petitioner with proof that he was the person named in the indictment before he would admit that he had been lying. Furthermore, he testified that Petitioner invoked his rights after he was arrested, refused to provide a statement to police, and asked to speak to an attorney. In light of counsel's interactions with Petitioner, the fact that Dr. Herrera's report determined that he was competent to proceed with sentencing in the earlier case, and the high level of deference afforded counsel's decisions, counsel's actions were not unreasonable. Because Petitioner failed to establish that his counsel's performance was deficient, we need not determine whether counsel's performance prejudiced his case.

AFFIRMED.

12