[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**December 15, 2004**
**THOMAS K. KAHN**
**CLERK**

_____

No. 03-14790
_____

D.C. Docket No. 02-00097 CR-1-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES F. BIDWELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
Northern District of Georgia

_____

**(December 15, 2004)**

Before TJOFLAT, DUBINA and PRYOR, Circuit Judges.

TJOFLAT, Circuit Judge:

James F. Bidwell sexually abused his daughter. He also filmed that abuse, and distributed those films. For his sexual abuse, a Georgia state court sentenced Bidwell to 30 years imprisonment. For filming and distributing the films of that abuse, the District Court for the Northern District of Georgia sentenced Bidwell to 15 years imprisonment, which the court ordered to run consecutively to his state sentence. Bidwell argues that under U.S.S.G. § 5G1.3, the district court erred in ordering his federal sentence to run consecutively—rather than concurrently—to his state sentence. We disagree, and thus affirm the district court's original sentence.

This opinion proceeds in three parts. Part I lays out the factual and procedural background. Part II describes and applies section 5G1.3, concluding that the district court was not required to impose a concurrent sentence, and thus did not err in imposing a consecutive sentence. Part III briefly concludes.

I.

Bidwell lived in Toccoa, Georgia. It was there where he sexually abused[1]

---

[1] Bidwell sexually abused his daughter in many ways. Because it is not necessary for us to detail these acts, we use the term "sexual abuse" as an umbrella for all forms of sexual abuse.

his daughter, and where he filmed and distributed the films of that abuse. But it was in England where Bidwell's abuse would be discovered.

In December 2001, the National Hi-Tech Crime Unit in London investigated an international Internet group that exchanged child pornography. The British police then arrested an British man connected to that group. In a search of his apartment, the police found an envelope postmarked from Toccoa. The British man said that the envelope had contained a VHS tape with approximately 30 minutes of Bidwell sexually abusing a child. The British man also said that he had destroyed the VHS tape and transferred its contents to a CD-ROM. The British police reported its investigation to the Federal Bureau of Investigation in Georgia. An FBI agent then interviewed Bidwell's common-law wife, who identified the child as her and Bidwell's six-year-old daughter. Bidwell was interviewed several times: he admitted to some forms of sexual abuse, but denied others.

Meanwhile, in February 2002, the Royal Canadian Mounted Police arrested a Canadian man for possession of child pornography. The man gave the police a video with approximately four hours of Bidwell sexually abusing his daughter, which Bidwell had recently sent to the Canadian man.

On February 7, 2002, Bidwell was indicted in Georgia state court on several

counts of rape and aggravated child molestation.[2]  On December 5, 2002, Bidwell

pleaded guilty to one count of rape and two counts of aggravated child

molestation.  The state court sentenced him to 20 years imprisonment on the rape

count and 30 years imprisonment on each of the two counts of aggravated child

molestation.  The court ordered these sentences to be served concurrently.

Bidwell was thus serving a 30-year, undischarged state sentence at the time of his

federal sentencing.

On October 17, 2002, Bidwell was indicted in federal court on three counts:

one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a),[3]

---

[2] The Presentence Report (PSR) lists the state charges as follows: "Ct. 1) Rape, Cts. 2-4) Aggravated Child Molestation, Cts. 5-7) Child Molestation, Cts. 8 & 9) Sexual Exploitation of Children, Ct. 10) Tampering with Evidence . . . ."  However, neither the PSR nor any other document in the record gives citations to the applicable Georgia statutes.  But because the state charges focus on Bidwell's sexual abuse, while the federal charges focus on Bidwell filming and distribution of those films, we need not speculate about the exact statutes that apply.

Nevertheless, we note that state Counts Eight and Nine, alleging "Sexual Exploitation of Children," likely reference section 16-12-100 of the Georgia State Code.  See generally Ga. Code § 16-12-100 (2004).  We further note that this section, under which Bidwell was charged but not sentenced, contains similar language to the federal statute at issue.  Compare Ga. Code § 16-12-100(b)(1) (2004) ("It is unlawful for any person knowingly to employ, use, persuade, induce, entice, or coerce any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual medium depicting such conduct."), with 18 U.S.C. § 2251(a) (2000) (applying to "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct").

[3] While subsequently amended, at the applicable time this statute read as follows:
Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such

and two counts of transporting child pornography in violation of 18 U.S.C. § 2252A(a)(1).[4] On August 4, 2003, Bidwell pleaded guilty to the indictment. Then, on September 12, 2003, the district court sentenced Bidwell to 180 months imprisonment on each of the three counts. These sentences were to run

> minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251 (2000). Likewise, while subjection (d) was subsequently amended, at the applicable time it read as follows:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, and both, but if such person has one prior conviction under this chapter, chapter 109A, or chapter 117, or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned for not less than 15 years nor more than 30 years, but if such person has 2 or more prior convictions under this chapter, chapter 109A, or chapter 117, or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 30 years nor more than life. Any organization that violates, or attempts or conspires to violate, this section shall be fined under this title. Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C. § 2251(d) (2000).

[4] This statute applies to "[a]ny person who . . . knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography." 18 U.S.C. § 2252A(a)(1) (2000).

5

concurrently with each other, but consecutively to Bidwell's state sentence. Bidwell objected, arguing that the district court's sentence is "contrary to 5G1.3."

Bidwell appeals the district court's decision to run his federal sentences consecutively to his undischarged state sentence. This is Bidwell's only assignment of error. See 18 U.S.C. § 3742(a)(2) (permitting a defendant to "file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines").

## II.

This case is about the application of U.S.S.G. § 5G1.3. We review such questions de novo. United States v. Bradford, 277 F.3d 1311, 1316 (11th Cir. 2002); United States v. Blanc, 146 F.3d 847, 851 (11th Cir. 1998).

Section 5G1.3 has changed since Bidwell was sentenced. See generally U.S.S.G. amend. 660 (Nov. 1, 2003). The general rule is that "we apply the guidelines in effect at the time of a defendant's sentencing hearing." United States v. Shields, 87 F.3d 1194, 1196 n.2 (11th Cir. 1996). Thus, we apply section 5G1.3 as it read when the district court sentenced Bidwell on September 12, 2003:

(a)     If the instant offense was committed while the defendant was
        serving a term of imprisonment (including work release,
        furlough, or escape status) or after sentencing for, but before

> commencing service of, such term of imprisonment, the
> sentence for the instant offense shall be imposed to run
> consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of
> imprisonment resulted from offense(s) that have been fully
> taken into account in the determination of the offense level for
> the instant offense, the sentence for the instance offense shall
> be imposed to run concurrently to the undischarged term of
> imprisonment.
>
> (c) (Policy Statement) In any other case, the sentence for the
> instant offense may be imposed to run concurrently, partially
> concurrently, or consecutively to the prior undischarged term
> of imprisonment to achieve a reasonable punishment for the
> instant offense.

U.S.S.G. § 5G1.3 (2002). Both parties agree that subsection 5G1.3(a) does not

apply. We thus focus on subsection 5G1.3(b).

Subsection 5G1.3(b) does not act alone. Rather, it incorporates U.S.S.G. §

1B1.3, which determines what conduct is relevant in determining a host of

sentencing issues. See U.S.S.G. § 1B1.3(a) (listing the issues to include "(i) the

base offense level where the guideline specifies more than one base offense level,

(ii) specific offense characteristics and (iii) cross references in Chapter Two, and

(iv) adjustments in Chapter Three"). In this case, the applicable subsection is

subsection 1B1.3(a)(1)(A), which defines relevant conduct to include

> all acts and omissions committed, aided, abetted, counseled,
> commanded, induced, procured, or willfully caused by the defendant .
> . . that occurred during the commission of the offense of conviction,
> in preparation for that offense, or in the course of attempting to avoid

7

detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(A). But see United States v. Fuentes, 107 F.3d 1515, 1525 (11th Cir. 1997) (finding that a different subsection of 1B1.3 applies, namely "[s]ection 1B1.3(a)(2) . . . define[d] relevant conduct for determining Fuentes' sentence" in a conspiracy case).

Sections 5G1.3 and 1B1.3 interact to protect a criminal defendant from duplicative prosecutions. The Double Jeopardy Clause does not prevent different sovereigns (i.e., a state government and the federal government) from punishing a defendant for the same criminal conduct. But sections 5G1.3 and 1B1.3 do. These sections seek "to provide one, uniform punishment for the same criminal activity." Fuentes, 107 F.3d at 1522; see also United States v. Swan, 275 F.3d 272, 277 (3d Cir. 2002) ("Section 5G1.3(b) appears to be aimed at the situation in which, unless the sentences were concurrent, the defendant would be serving two sentences for essentially the identical offense."). The Supreme Court describes subsection 5G1.3(b) as part of the "safeguards built into the Sentencing Guidelines [that] protect [a defendant] against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct." Witte v. United States, 515 U.S. 389, 405, 115 S. Ct. 2199, 2209, 132 L. Ed. 2d 351 (1995). With this policy in mind, we proceed to the facts of this case.

Bidwell makes several arguments for why the district court erred in imposing a consecutive sentence:

> the offenses prosecuted by the state occurred in connection with, during, and at the same time as, those prosecuted by the federal government; Mr. Bidwell's mandatory minimum went from 10 years to 15 years in reliance on the state conduct/conviction; and the cross-reference to 2G2.1, calling for a higher guideline level, was applied <u>because of</u> the state conduct.

Each of these arguments, however, fails to overcome a plain reading of subsection 5G1.3(b). Subsection 5G1.3(b) applies only when the "undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the <u>offense level</u> for the instant offense." (emphasis added). Here, the district court applied guidelines involving sexual exploitation and the trafficking of child pornography. <u>See</u> <u>generally</u> U.S.S.G. § 2G2.1; U.S.S.G. § 2G2.2. Thus, Bidwell's state conviction did not concern conduct involved in determining his offense level under these guidelines because Bidwell's state and federal sentences involved different crimes. Specifically, Bidwell's state sentences were based on various forms of sexual abuse; Bidwell's federal sentences were based on exploiting a minor in the production of sexually explicit material and distributing images of child pornography. More plainly, "[t]he videotaping of the sexual abuse of a minor is a different crime than the sexual

9

abuse itself." United States v. Terry, 305 F.3d 818, 826 (8th Cir. 2002). So under a plain reading of sections 5G1.3 and 1B1.3, Bidwell's state sentences could not have been fully taken into account. This plain reading is reinforced by the district court's choice of which guidelines to apply. Specifically, the district court applied guidelines for the sexual exploitation of a minor in the production of sexually explicit material and the trafficking of child pornography; it did not apply the guidelines regarding sexual abuse. See generally U.S.S.G. § 2A3.1 ("Criminal Sexual Abuse: Attempt to Commit Criminal Sexual Abuse"). In sum, Bidwell's conduct regarding sexual abuse was only relevant to his state sentence, not his federal sentences.

Even if this plain reading were not plain enough, the weight of precedent supports our decision. This precedent comes from published circuit court decisions. See generally Terry, 305 F.3d 818. It also comes from unpublished circuit court decisions. See, e.g., United States v. Ludwig, No. 03-4270, 2004 WL 1472814, at *2 (10th Cir. July 1, 2004) (determining that the offense level for the defendant's act of "photographing a child in the nude . . . did not take into account under § 1B1.3 his state offenses involving sexual contact with various minors"); United States v. Hardy, No. 01-4083, 2001 WL 1521562, *2 (10th Cir. Nov. 30, 2001) (noting that "[t]he federal charges arose out of the videotaping of the

[sexual] abuse whereas the state charges were for the commission of the acts themselves"); United States v. Abbott, No. 99-6344, 2001 WL 1006256, *2 (6th Cir. Aug. 23, 2001) (rejecting the argument that subsection 5G1.3(b) requires a concurrent sentence "because the undischarged term of imprisonment (the eight-year suspended state rape sentence) resulted from an offense that was fully taken into account in determining the mandatory minimum sentence he received under 18 U.S.C. § 2252(b)(1)").

Bidwell responds to this plain reading of subsection 5G1.3(b) with an argument that overreads our precedent. Specifically, Bidwell dwells on the following passage from Fuentes: "The essence of Fuentes' argument is that the 'fully taken into account' requirement of section 5G1.3(b) is satisfied when the undischarged term resulted from an offense that section 1B1.3 requires to be included as relevant conduct, regardless of whether the sentencing court actually took that conduct into account. We agree." 107 F.3d at 1522. From this passage, Bidwell argues that the district court could have considered the conduct that led to his state sentence in fashioning his federal sentences. As explained above, this argument is foreclosed by a plain reading of sections 5G1.3 and 1B1.3. Moreover, Fuentes focused on a deliberate attempt by the Government to manipulate the application of the sentencing guidelines. See id. at 1523 ("condud[ing] that the

11

Government deliberately refrained from portraying Fuentes' [course of conduct] as relevant conduct for one reason—to manipulate the application of the guidelines so that his federal sentence would run consecutively to the state sentences"). Bidwell makes no such charge of manipulation here, and the facts do not support any such inference. Rather, this is a case in which a state government prosecuted a defendant for sexually abusing his daughter, while the federal government prosecuted the defendant for filming and distributing child pornography. In such a case, section 5G3.1 does not bar a federal court from exercising its discretion under 5G3.1(c) and imposing sentences that run consecutively to the defendant's state sentence.

### III.

For the reasons stated above, we conclude that the district court did not err in ordering Bidwell's federal sentences to run consecutively—rather than concurrently—with his state sentence.

AFFIRMED.