[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10470
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00222-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON DEJUAN WARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(December 2, 2019)

Before WILLIAM PRYOR, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Brandon Ward appeals his 120-month sentence after pleading guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Ward argues that the district court (1) abused its discretion by failing to order a competency hearing *sua sponte*; (2) plainly erred by declining to set his federal sentence to run concurrently with an anticipated state sentence based on relevant conduct; and (3) erred by omitting from his indictment and plea colloquy the "knowledge-of-status" element of §§ 922(g)(1) and 924(a)(2), as required by the Supreme Court's recent decision in *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191 (2019). After careful review, we affirm Ward's conviction but vacate and remand for resentencing.

## I.

In September 2017, police officers responded to a call at a residence in Selma, Alabama, in reference to a gunshot victim. The victim told the officers that he had allowed Ward into his home to use a computer to fill out a job application. But as the victim cleaned his bathroom, Ward burst in waving a gun and demanding money. Ward then shot the victim in the left arm and fled the scene in the victim's vehicle. The officers recovered a 9mm shell casing and two live 9mm rounds at the scene. Later, the officers discovered the victim's vehicle in a neighboring county and found a Hi-Point 9mm pistol and a large-capacity magazine in the center console. After

2

his arrest in December 2017, Ward was charged by state authorities with attempted murder and first-degree burglary.

In July 2018, a federal grand jury indicted Ward on one count of illegal possession of a firearm by a convicted felon. *See* 18 U.S.C. §§ 922(g)(1) & 924(a)(2). The indictment alleged that he had been convicted of the felonies of Burglary First Degree and Receiving Stolen Property First Degree in 2004, and of Discharging a Firearm into an Occupied Building in 2017. In an open plea to the indictment, without a plea agreement, Ward pled guilty to the federal offense in September 2018.

At the change-of-plea hearing, Ward stated that he had seen a psychologist in 2016 at Bibb County Correctional Facility who told him to get evaluated, but he did not do so. Ward advised the court that he was pleading guilty because he was in fact guilty and that he understood the consequences of his plea. When asked whether the government had offered Ward a plea agreement, Ward's counsel told the court that Ward had declined the government's plea offer after "discuss[ing] it fully" with counsel. The court explained that, in order to convict Ward, the government would have to show that he knowingly possessed the firearm, it had traveled in interstate or foreign commerce, and he had been convicted of a felony before possessing the firearm. Ward stated that he understood these elements and that the government could prove that he possessed a firearm because "[t]hey have it on camera." At the

3

conclusion of the hearing, the court found that Ward was "fully competent and capable of entering an informed plea" and accepted his guilty plea.

The probation office prepared Ward's presentence investigation report ("PSR") and calculated his recommended guideline range.  While the offense level for firearm possession offenses typically is calculated under U.S.S.G. § 2K2.1, the PSR set a base offense level of 27 using U.S.S.G. § 2A2.1, the guideline for "Assault with Intent to Commit Murder; Attempted Murder," after applying the "cross reference" at U.S.S.G. § 2K2.1(c)(1)(A).  The cross reference states that, if the defendant used or possessed the firearm in connection with another offense, the court should apply the guideline applicable to that other offense if it results in a higher offense level.  After applying a two-level increase for bodily injury and a three-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 26.  The PSR then outlined Ward's criminal history, including the three felony convictions referenced in the indictment, and determined a criminal-history category of VI.  Together, the total offense level and criminal-history category established a recommended guideline imprisonment range of 120 to 150 months, which was then reduced to the statutory maximum of 120 months.

The PSR also discussed Ward's mental and emotional health.  According to the PSR, Ward was being treated for depression at a county jail, and psychiatric records showed that he had been diagnosed with schizoaffective disorder-bipolar

type on October 25, 2018, but he had not been prescribed medication for this condition. Ward also reported receiving mental-health treatment as a teenager.

Ward submitted a sentencing memorandum detailing that he received mental-health treatment as a young child after hearing voices, became suicidal after his parents died, and stopped receiving treatment when he went to live with his sister. It also stated that he had been prescribed Zoloft for depression as a teenager but had stopped taking it. More recently, the memorandum stated, he attempted suicide in October 2018 and was taken to a hospital for "crisis intervention." Ward reported hearing voices telling him to hurt himself and experienced "poor sleep, depression, irritability, anxious mood, difficulty concentrating, and rambling thoughts."

At sentencing, Ward's counsel withdrew Ward's sole objection to the PSR, stating that she had discussed the matter with Ward. The district court adopted the PSR's guideline range and then, after stating that it had reviewed Ward's sentencing memorandum, invited the parties' views on an appropriate sentence. Contending that a downward variance was appropriate, Ward's counsel asserted that the "system has failed [Ward] consistently over and over" and that he needed mental health treatment. Counsel also asked the court "to consider . . . a concurrent sentence with whatever state sentence he may receive, because those state charges are still pending" and a trial date was set. When the court asked Ward if he had "anything [he'd] like to say," Ward responded that he took full responsibility for his actions.

The district court imposed a sentence of 120 months of imprisonment with a recommendation for an institution with a mental-health treatment program. The court declined to run the sentence concurrent "with whatever [he] may get in the pending state charges, because those are different charges." While acknowledging that the "attempted murder and the burglary first degree arose out of this same incident," the court emphasized they were "definitely different charges." At the conclusion of sentencing, Ward objected "to the [c]ourt's declining to run [the sentence] concurrent with the state sentence." Ward now appeals.

While this appeal was pending, the Supreme Court decided *Rehaif*, which held that, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the [g]overnment must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Previously, in this Circuit, the government was not required to prove a defendant's knowledge of his status as a convicted felon. *Id.* at 2194–95. After *Rehaif* was decided, we permitted the parties to file supplemental briefs addressing its effect on this case.

## II.

Ward first contends that the district court should have ordered a competency hearing in light of evidence that he was not competent to plead guilty and be sentenced. We review for an abuse of discretion a district court's failure to conduct

6

a competency hearing *sua sponte*. *United States v. Wingo*, 789 F.3d 1226, 1236 (11th Cir. 2015).

The Due Process Clause of the Fifth Amendment requires that a defendant be mentally competent to be tried or convicted. *United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014). The standard of competence is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id.* (quotation marks omitted). "Evidence of incompetence must indicate a present inability to assist counsel or understand the charges." *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009) (quotation marks omitted). For that reason, "an allegation of mental illness or other mental disability does not invalidate a guilty plea if the defendant was still competent to enter that plea." *Rodriguez*, 741 F.3d at 1252; *Pardo*, 587 F.3d at 1101 (absent evidence of an inability to assist counsel or understand the charges, "evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial").

Under 18 U.S.C. § 4241, it's the court's "obligation to *sua sponte* hold a hearing if it has 'reasonable cause' to believe that the defendant 'may' be incompetent." *Wingo*, 789 F.3d at 1236 (quoting *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir. 1990)). The "reasonable cause" standard is satisfied if the court has

7

"a bona fide doubt regarding the defendant's competence." *Id.* Courts should consider three factors in determining whether there is such a bona fide doubt: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor in court; and (3) prior medical opinions regarding the defendant's competence. *Id.* The court must "consider the aggregate of evidence pertaining to all three prongs," though evidence under a single prong may sometimes be enough to establish a bona fide doubt. *Id.* In addition, "counsel's failure to raise the competency issue can be persuasive evidence that competency is not in doubt." *Id.* at 1238.

In Ward's view, two pieces of evidence created reasonable cause to believe that he was not competent to plead guilty and be sentenced. First, at the plea hearing, the district court heard that Ward had been advised by a psychologist "to get evaluated" but asked no follow up questions. Then, just before sentencing, the court learned that Ward had been diagnosed with a serious mental disorder after he attempted suicide in jail and reported auditory hallucinations.

Applying the three factors, on this record, we cannot say that the district court abused its discretion by failing to order a competency hearing *sua sponte*. True, the record shows that Ward had a history of mental illness, that he suffered auditory hallucinations and may have tried to commit suicide after pleading guilty, and that he was then diagnosed with schizoaffective disorder-bipolar type. But there are no prior medical opinions regarding Ward's competence, and his demeanor at the

8

change-of-plea hearing and sentencing indicates that he had a rational and factual understanding of the proceedings against him and was able to assist counsel. *See Rodriguez*, 751 F.3d at 1252; *Pardo*, 587 F.3d at 1101. Plus, Ward's counsel expressed no concerns regarding Ward's competency.

At the change-of-plea hearing, Ward was responsive to the court's questions, and his answers indicated that he understood the elements of his offense, the evidence that the government could use to prove those elements, and the consequences of pleading guilty. The district court was able to observe Ward's demeanor and concluded that he was "fully competent and capable of entering an informed plea." Additionally, his counsel's statement that she and Ward had fully discussed the plea agreement indicated that he was able to consult with his lawyer.

Then, at sentencing, the district judge again had an opportunity to observe Ward's demeanor. Although by that time Ward had attempted suicide and received a diagnosis, neither Ward nor his counsel indicated that these events rendered him incompetent to proceed with sentencing, which is "persuasive evidence that competency is not in doubt." *Wingo*, 789 F.3d at 1238. Ward's participation at sentencing was limited, but his counsel indicated that she had discussed a sentencing objection with Ward before deciding to withdraw it, and Ward advised the court that he took full responsibility for his actions.

Overall, the defendant's exchanges with the trial judge, while limited in scope, reveal that Ward was able to respond clearly and properly to the court's questions, and Ward's and his counsel's statements demonstrate that he understood the nature of the proceedings against him and was able to assist counsel.

On this record, we cannot say that the evidence Ward points to created "'reasonable cause' [for the court] to believe that the defendant 'may' be incompetent." *Wingo*, 789 F.3d at 1236. Ward's statement at the plea hearing that a psychologist had told him to "get evaluated" several years earlier did not bear on his *present* understanding of the proceedings or ability to consult with his lawyer. *See Rodriguez*, 741 F.3d at 1252. And while he was treated for depression and diagnosed with schizoaffective disorder-bipolar type before the sentencing hearing, there was no evidence that these conditions affected his competency, despite some evidence of irrational behavior outside of court. *See id.*; *Pardo*, 587 F.3d at 1101. In short, on this record, we conclude the district court did not abuse its discretion by failing to hold a competency hearing *sua sponte*.

## III.

Ward next argues that the district court procedurally erred by failing to apply or even acknowledge U.S.S.G. § 5G1.3(c), which, in Ward's view, directed that his sentence run fully concurrent with his anticipated state sentence.

10

To preserve an issue for review, "one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice." *United States v. Dennis*, 786 F.2d 1029, 1042 (11th Cir. 1986). Although Ward objected generally to the decision to run his federal sentence consecutive to the anticipated state sentence, he did not bring to the court's attention § 5G1.3 specifically. Because he did not raise "the particular grounds upon which appellate relief" is now sought, we review for plain error only. *Id.*

"The plain-error test has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (quotation marks omitted). To demonstrate that an error affected his substantial rights, a defendant "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. ___, ___, 136 S. Ct. 1338, 1343 (2016) (quotation marks omitted).

Section 5G1.3 provides guidance for sentencing a defendant who is subject to an undischarged term of imprisonment or an anticipated state term of imprisonment. As relevant here, subsection (c) advises courts that a federal sentence "shall be

11

imposed to run concurrently" with an anticipated, but not yet imposed, state sentence resulting from an offense that is "relevant conduct to the instant federal offense." U.S.S.G. § 5G1.3(c).    "Relevant conduct" includes "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction[] [or] in preparation for that offense."    U.S.S.G. § 1B1.3(a)(1)(A).  It is used to determine "(i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three."  U.S.S.G. § 1B1.3(a).

We have observed that "[s]ections 5G1.3 and 1B1.3 interact to protect a criminal defendant from duplicative prosecutions."  *United States v. Bidwell*, 393 F.3d 1206, 1210 (11th Cir. 2004).  Through these provisions, the guidelines "seek to provide one, uniform punishment for the same criminal activity."  *Id.* (quotation marks omitted).

Section 5G1.3(c) applies in this case.  A "state term of imprisonment [was] anticipated to result" from the pending state charges,[1] and the state charges—or, at the very least, the attempted-murder charge—were "relevant conduct to the instant

---

[1] The government vaguely suggests that a state sentence must be "imminent" for § 5G1.3(c) to apply, but it points to no supporting authority.  And we find that it is enough that the state charges were set for trial at the time of sentencing. *See United States v. Olmeda*, 894 F.3d 89, 93 (2d Cir. 2018) ("It follows that an 'anticipated' state sentence must, at minimum, encompass sentences associated with state charges for relevant conduct that are pending at the time of a defendant's federal sentencing.").

federal offense." U.S.S.G. § 5G1.3(c). Indeed, the district court calculated Ward's offense level under the guideline for "Assault with Intent to Commit Murder; Attempted Murder," U.S.S.G. § 2A2.1, after applying the cross reference at U.S.S.G. § 2K2.1(c)(1)(A), based on his conduct of shooting the victim with a firearm. *See* U.S.S.G. § 1B1.3(a). Accordingly, § 5G1.3(c) directed that the federal sentence "shall be imposed to run concurrently to the anticipated term of imprisonment." U.S.S.G. § 5G1.3(c).

Of course, as the government points out, because the guidelines are advisory, a district court is not required to impose a concurrent sentence, even if § 5G1.3(c) applies. *See* 18 U.S.C. § 3584(a); *Setser v. United States*, 566 U.S. 231, 236–37 (2012) (stating that it was "within the District Court's discretion to order that [the defendant's] sentence run consecutively to his anticipated state sentence."). Despite its mandatory language, § 5G1.3(c) is merely a recommendation, and courts may disagree with a guideline recommendation. *See Kimbrough v. United States*, 552 U.S. 85, 91, 101 (2007) (holding that sentencing guidelines are "advisory only" and that courts may disagree with them).

But district courts still must correctly calculate the guideline range and consider what the guidelines recommend. *See Molina-Martinez*, 136 S. Ct. at 1342 ("Although the district court has discretion to depart from the Guidelines, the court must consult those Guidelines and take them into account when sentencing."

(quotation marks omitted)); *Peugh v. United States*, 569 U.S. 530, 537 (2013) ("Failure to calculate the correct Guidelines range constitutes procedural error . . . ."). "For that reason, courts must correctly determine whether the Guidelines recommend concurrent sentences." *United States v. Nania*, 724 F.3d 824, 830 (7th Cir. 2013) (collecting cases). "Failure to do so results in procedural error." *Id.*

Here, Ward has established plain error. Ward has shown that the district court procedurally erred by failing to determine that, under the plain terms of § 5G1.3(c), the guidelines recommended a concurrent federal sentence in order to ensure that he received "one, uniform punishment for the same criminal activity." *Bidwell*, 393 F.3d at 1210; *see United States v. Kieffer*, 681 F.3d 1143, 1167–68 (10th Cir. 2012) ("[A] proper calculation of Defendant's guideline range required [the court] to account for U.S.S.G. § 5G1.3(b)."). The court neither referenced § 5G1.3 nor accounted for this policy. The court simply observed that the state offenses were for "different charges," which plays no role in the guidelines' framework. To the extent the court meant that the state offenses did not constitute relevant conduct, that was clearly erroneous and inconsistent with its own guideline calculations. Accordingly, we conclude that the district court procedurally erred and that this error was plain.

In addition, the district court's error affected Ward's substantial rights. The difference between the concurrent sentence recommended by § 5G1.3(c) and the

14

consecutive sentence imposed by the court was substantial.  Nor can we tell what the district court might have done had it properly considered § 5G1.3(c).  And where "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez*, 136 S. Ct. at 1347.  Because there are no "unusual circumstances" in this case, it suffices here.  *See id.*

Finally, the fourth prong of plain error is usually met if an error affects a defendant's substantial rights.  *Rosales-Mireles v. United States*, 585 U.S. ___, ___, 138 S. Ct. 1897, 1911 (2018).  Here, there is a reasonable possibility that Ward will spend more time in prison than the district court otherwise might have considered necessary had it accounted for § 5G1.3(c), and there are no "countervailing factors" showing "that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction."  *See id.* at 1909.  So we conclude that the error seriously affects the fairness, integrity, and public reputation of judicial proceedings.  Accordingly, we vacate Ward's sentence and remand for resentencing for the court to consider § 5G1.3(c).

## IV.

In a supplemental brief, Ward contends that his conviction should be vacated because, in light of *Rehaif*, his indictment and plea colloquy failed to state an

15

essential element of an offense under §§ 922(g)(1) and 924(a)(2).  He states that *Rehaif* established that a defendant's knowledge of his status as a convicted felon is an element of the offense, so the omission of this critical element from his indictment and plea colloquy was plain error.

To the extent Ward challenges the indictment as defective, he waived that challenge by pleading guilty.  Although "[a]n indictment must set forth the essential elements of the offense," *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015), a guilty plea waives all non-jurisdictional defects that occurred before the entry of the plea, including an omission of a mens rea element from an indictment, *United States v. Brown*, 752 F.3d 1344, 1347, 1351, 1354 (11th Cir. 2014).

As to Ward's challenge to his guilty plea based on *Rehaif*, we review this newly raised claim for plain error.  *See United States v. Rahim*, 431 F.3d 753, 756 (11th Cir. 2005) (questions of statutory interpretation raised for the first time on appeal are reviewed for plain error).  Both parties agree that Ward has met the first two prongs of plain-error review by showing an error that was clear or obvious.  *See Henderson v. United States*, 568 U.S. 266, 273 (2013) (explaining that the first two elements of plain error are met if an error becomes clear while the case is on appeal).  In particular, the Supreme Court in *Rehaif* recently reversed this Circuit's precedent and held that in a prosecution under §§ 922(g)(1) and 924(a)(2), "the [g]overnment must prove both that the defendant knew he possessed a firearm and that he knew

16

he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. Because the plea colloquy did not establish that Ward knew he had been convicted of "a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), the error was plain under *Rehaif*.

As to the third prong of plain-error review, Ward acknowledges that, to establish that his substantial rights were affected, he must show a reasonable probability that he "would not have pled guilty had the government been required to prove his knowledge of status." Ward's Supp. Brief at 9; *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea."). Because the plain-error doctrine is intended to "correct only particularly egregious errors," *United States v. Young*, 470 U.S. 1, 15 (1985), we "may consult the whole record when considering the effect of any error on substantial rights," *United States v. Vonn*, 535 U.S. 55, 59 (2002).

Here, Ward has not shown that the error affected his substantial rights. According to undisputed facts in the PSR, Ward had been convicted of five felony convictions in a Florida court when he possessed the firearm in this case, and four of these convictions resulted in sentences of either ten or fifteen years of imprisonment. Ward points out that the vast majority of this time was suspended in

favor of probation, citing an observation in *Rehaif* that "a person who was convicted of a prior crime but sentenced only to probation" may not know that the crime is "punishable by imprisonment for a term exceeding one year." *Rehaif*, 139 S. Ct. at 2198. But Ward was not sentenced "only to probation," and, in any event, his probation was revoked in May 2008, and he remained in prison for nearly eight years until his release in May 2016. The fact that Ward received multiple sentences of more than one year of imprisonment for serious felonies—and in fact served nearly eight years in prison—indicates that he knew that his prior offenses were punishable by more than one year of imprisonment.

Ward contends that our review must be limited solely to the convictions alleged in the indictment. But even if we assume for purposes of this appeal that Ward is correct in this regard, he still cannot show a reasonable probability of a different result. With respect to his 2004 convictions for First Degree Burglary and First Degree Receiving Stolen Property, which were alleged in the indictment, the PSR reflects that Ward served 18 months of his 10-year sentence before the remainder of his sentence was suspended. So to the extent Ward could reasonably claim ignorance as to the particular grounds for his revocation sentence, he still served more than one year of imprisonment on the 2004 convictions before beginning probation. Accordingly, even if we limit our review to the convictions

18

alleged in the indictment, we still cannot say that Ward may not have been aware that he was a convicted felon.

Because the record indicates that Ward was aware of his status as a convicted felon at the time of his possession of a firearm, there is no reason to believe that he would have continued to trial absent the district court's error in not informing him that the government was required to prove "that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. For these reasons, we affirm as to this issue.

## V.

In sum, we affirm Ward's conviction for possession of a firearm by a convicted felon. We vacate and remand for resentencing consistent with this opinion.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**